IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **INVESTORS GROUP, LLC**, | § | |
| | § | |
| Appellant, | § | |
| | § | |
| v. | § | Civil Action No. **3:13-CV-4265-L** |
| | § | Bankruptcy Case No. 13-32488-sgj11 |
| **MICHAEL POTTORFF AND** | § | |
| **MONICA FABIO,** | § | |
| | § | |
| Appellees. | § | |

### MEMORANDUM OPINION AND ORDER

Before the court is Appellant Investors Group, LLC's appeal of the bankruptcy court's August 12, 2013 Order Dismissing Bankruptcy Petition. After careful consideration of the briefs, the record on appeal, and the applicable law, the court **affirms** the bankruptcy court's decision and **dismisses with prejudice** this appeal.

**I.    Factual and Procedural Background**

This appeal arises from the bankruptcy court's dismissal of a Chapter 11 voluntary bankruptcy petition filed by Appellant Investors Group, LLC ("Appellant" or "Investors Group") on May 9, 2013. Appellees Michael Pottorff and Monica Fabio ("Appellees") are two minority equity investors owning approximately five percent of the equity interests in Investors Group. Investors Group, originally called WE Investors Group ("WEIG"), was formed solely to invest in White Energy Partners, LLC ("WEP"). WEP merged with its subsidiary, WE Inc. WE Inc. went bankrupt and no longer exists. Investors Group therefore has no ongoing business. Investors Group, however, has $3 million from a previous settlement in a trust account held by Investors Group's former

**Memorandum Opinion and Order - Page 1**

counsel, K&L Gates. The settlement agreement governing the distribution of the $3 million stipulated that the funds would not be released to Investors Group until either (1) all of Investors Group's members released their individual claims in the dispute, or (2) the fifth anniversary of the settlement. Appellees declined to release their claims and therefore the $3 million remains in the trust account.

On January 28, 2011, Appellees filed a derivative suit on behalf of Investors Group, alleging breaches of fiduciary duty, usurpation of corporate opportunity, fraud, and a breach of contract claim against White Ventures, LLC, an entity owned by Investors Group's sole managing member. Approximately $5 million is in controversy in the state law suit, which revolves around the sale of White Ventures's stock that occurred before allowing Investors Group to exercise its "tag-along" rights.

On May 9, 2013, Investors Group filed for bankruptcy. On June 26, 2013, Appellees moved to dismiss Appellant's bankruptcy petition for bad faith, to which Appellant responded. On July 30, 2013, the bankruptcy court conducted a hearing on the motion and, at the conclusion of the hearing, concluded that the Appellee's Motion to Dismiss should be granted. Specifically, the bankruptcy court found that Appellant filed in bad faith, that Appellant is solvent, and that this is essentially a two-party dispute that can be resolved by the state court. On August 12, 2013, the bankruptcy court issued its order, dismissing Appellant's petition and ordering remand to state court. Investors Group appeals the dismissal.

## II.    Standard of Review

In a bankruptcy appeal, district courts review bankruptcy court rulings and decisions under the same standards employed by federal courts of appeal: a bankruptcy court's findings of fact are

reviewed for clear error, and its conclusions of law are reviewed de novo. *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 701 (5th Cir. 2003); *Century Indem. Co. v. National Gypsum Co. Settlement Trust (In re National Gypsum Co.)*, 208 F.3d 498, 504 (5th Cir. 2000). A bankruptcy court's "findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous." Fed. R. Bankr. P. 8013.

A finding is clearly erroneous and reversible only if, based on the entire evidence, the reviewing court is left "with the definite and firm conviction that a mistake has been made." *In re Dennis*, 330 F.3d at 701 (citation omitted). In conducting this review, the court must give due regard to the opportunity of the bankruptcy judge to determine the credibility of the witnesses. *Id.*; *Young v. National Union Fire Ins. Co. (In re Young)*, 995 F.2d 547, 548 (5th Cir.1993) (quoting Fed. R. Bankr. P. 8013). A bankruptcy judge's evidentiary rulings are reviewed for an abuse of discretion. *See In re Rapine*, 536 F.3d 512, 518 (5th Cir. 2008). The bankruptcy court has "great latitude" when conducting a bench trial. *See Matter of Corland Corp.*, 967 F.2d 1069, 1074 (5th Cir. 1992) (citing *Cranberg v. Consumers Union of U.S., Inc.*, 756 F.2d 382, 392 (5th Cir. 1985)).

### III.    Analysis

Investors Group raises two arguments for reversing the bankruptcy court's dismissal. First, Investors Group argues that the bankruptcy court erred in finding that Appellant filed for bankruptcy in bad faith. Second, Investors Group argues that the bankruptcy court erred in finding that the dismissal was in the best interest of the debtor entity. Because the issue of bad faith is dispositive, the court does not address whether dismissal was in the best interest of Investors Group.

### A. Bad Faith

The bankruptcy court did not err in finding that the Appellant filed for bankruptcy in bad faith. Investors Group argues that the bankruptcy court erred because: (1) forum shopping and filing to gain a tactical advantage in state court are not sufficient bases to justify dismissal; (2) Investors Group is insolvent; and (3) Appellee's derivative suit is not merely a two-party dispute.

"A bankruptcy court's determination that a debtor has acted in bad faith is a finding of fact reviewed for clear error." *In re Jacobsen*, 609 F.3d 647, 652 (5th Cir.2010). Bad faith is determined based on the totality of the circumstances. *See In re Nassar*, 216 B.R. 606, 608 (Bankr. S.D. Tex. 1998) ("The bad faith determination focuses on the totality of the circumstances . . . .) (citations omitted).

Filing a bankruptcy petition in bad faith, although not explicitly enumerated in 11 U.S.C. §1112, is an adequate basis to dismiss a bankruptcy petition. *See Matter of Little Creek Development Co.*, 779 F.2d 1068, 1071 (5th Cir. 1986) (stating "[e]very bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings," but ultimately holding that the bankruptcy court was too hasty in its finding of bad faith.) (citations omitted); *In re Mirant Corp.*, No. 03-46590, 2005 WL 2148362, at *5 (Bankr. N.D. Tex. January 26, 2005) ("Lack of good faith is not one of the enumerated examples in section 1112(b), but many courts have held that lack of good faith is appropriate cause for dismissal under that section.") (citations omitted).

                    *1.*      *Filing as a Litigation Tactic*

Appellant argues that it did not file for bankruptcy to gain a tactical advantage over the state court litigation.[1] Appellees argue that Appellant waited until 13 days before the trial date to file for bankruptcy. Appellees further argue that this occurred less than 19 hours before a court-ordered deposition was scheduled and its documents were due.

The bankruptcy court gave the issues full consideration and granted Appellees' motion to dismiss at the hearing, stating:

> I do, I do find it a bad faith filing when I look at the 27-plus months of history in the state court litigation. It does appear we had a situation ripe for final adjudication . . . . I think that it was strategy on Mr. White's personal behalf to avoid the day in court on what looks like a very significant issue as to whether this debtor and these 15 equity members   16 equity members, should have gotten $5 million out of the White Venture transaction in February 2007.

Tr. Mot. to Dismiss and Appl. to Employ Proceeding at 132, No. 13-32488 (Bankr. N.D. TX July 30, 2013).

Appellant argues that filing for bankruptcy benefits the equity members and therefore the bankruptcy court found bad faith in error. At the hearing, the bankruptcy court expressed concern that Appellant, in attempting to proceed with reorganization, did not have a plan to address the $5 million derivative suit that would be stayed if the court denied the Appellees' Motion to Dismiss.[2] *Id*. at 123-24. Moreover, at the hearing, both sides admitted that a majority of the shareholders opposed Appellant's filing for bankruptcy and want Appellees to proceed with their derivative suit.

---

[1] This ground was not raised as an issue in Appellant's principal brief; it is merely a response to arguments raised in Appellee's Response.

[2] Trey White, the sole managing member of Investors Group, stated that he would reduce his $800,000 right to indemnification to compensate for the Appellees losing their day in court. The court acknowledges, however, that at the hearing Appellees' expressed concern over whether the $800,000 was even a fair estimate of White's right to indemnification.

**Memorandum Opinion and Order - Page 5**

*Id.* at 10-11 (Investor Groups's counsel stated that "there are a lot of shareholders that have a lot of difficulty with what we're tryi ng to accomplish."). Therefore, Appellant fails to establish or fully explain why proceeding with bankruptcy is in the equity members' best interest.

Appellant next relies on case law to support its contention that gaining a tactical advantage over a state court proceeding is insufficient, by itself, to support a finding of bad faith. The case cited by the Appellant does not support its position.

Appellant cites an unpublished order for the proposition that filing for bankruptcy to gain a litigation advantage is not dispositive of bad faith. Br. for Petitioner-Appellant at 2-3, *In re Investors Group, LLC*, Ch. 11 Case No. 13-32488 (Doc. 42), Adv. No. 13-03115 (June 13, 2013) (citing *Emtel v. Woods (In re Brazos)*, No. 11-00399 (Doc 8), at 6 (W.D. Tex. 2011). *Emtel*, however, upheld the bankruptcy court's dismissal, finding that the appellant filed in bad faith to "to wrest control of litigation away from the state court." *Id.* at 5 (citation omitted).

Appellant provides the court with the following quote in its brief: "merely obtaining a litigation advantage by pursuing bankruptcy is not dispositive of bad faith . . . ." *Id.* at 6. Appellant fails to provide the sentence in its entirety and, in so doing, alters the message that the district court intended to convey. The sentence, in its entirety, reads: "Merely obtaining a litigation advantage by pursuing bankruptcy is not dispostive of bad faith, but *when a bankruptcy court finds a party pursues bankruptcy for the purpose of securing litigation advantage in another forum, such intent is dispositive: it establishes bad faith and necessitates dismissal.*" *Id. at* 6 (emphasis added) (citing *In re Silberkraus,* 253 B.R. 890, 905 (Bankr. C.D. Cal. 2000) ("[I]t constitutes bad faith to file bankruptcy to impede, delay, forum shop, or obtain a tactical advantage regarding litigation ongoing in bankruptcy forum . . . .")). Therefore, Appellant misstates the holding of *Emtel*, which actually

**Memorandum Opinion and Order - Page 6**

stands for the proposition that filing in bad faith to secure a litigation advantage in another forum is not only case dispositive but also necessitates a dismissal.

Moreover, in affirming *Emtel*'s finding of bad faith, the Fifth Circuit stated, "[T]he bankruptcy court concluded that, as [appellant]'s creditors were mainly insiders and affiliates, and as the bankruptcy petition was filed without any pressure from those creditors, the only purpose of [appellant]'s filing was to gain control of the state-court claims that appellees are prosecuting derivatively on [appellant's] behalf." *In re Brazos Emergency Physicians Ass'n*, 471 F.App'x 393, 394 (5th Cir. 2012) (citing *In re Antelope Technologies, Inc.*, 431 F.App'x 272, 275 (5th Cir. 2011)).

The totality of circumstances weighs against Appellant. Although stated in an unpublished opinion, the Fifth Circuit's reasoning for affirming the district court's decision in *Emtel* is equally applicable to the court's determination of the issues before it in this case. Investors Group's creditors are mostly insiders. Appellant did not consult any of the shareholders before filing for bankruptcy and was not under any pressure from any of the creditors or shareholders.

What pressured Appellant was the impending state court litigation. Discovery had just ended, a significant court-ordered deposition was scheduled, and the trial date was approaching. Appellant, a day before the deposition and 13 days before trial, filed for bankruptcy. Based on this information, it was not clear error for the bankruptcy court to conclude that Appellant filed in bad faith as a litigation tactic to gain an advantage in the $5 million derivative lawsuit. Appellant effectively concedes this point. In its Response to Motion for Remand as to Adversary Proceedings, Appellant states that "this case was filed to fairly and equitably administer the [$3 million settlement] and resolve the Derivative Suit." Br. for Debtor at 15, *In re Investors Group, LLC*, Ch. 11 Case No. 13-32488 (Doc. 42), Adv. No. 13-03115 (June 13, 2013). Appellant admits that it filed

bankruptcy to obtain the settlement to which Appellees stood as the sole roadblocks to disbursement and to resolve the derivative suit by circumventing the over 27-month-old state case. After conducting a thorough hearing, the bankruptcy court concluded that the primary purpose for filing the bankruptcy petition was to gain an advantage in the derivative lawsuit. Accordingly, the bankruptcy court's finding that Investors Group filed bankruptcy in bad faith was not clearly erroneous.

### 2. *Solvency*

Although the bankruptcy court's finding that Appellant filed in bad faith to gain an advantage in the derivative lawsuit is sufficient on its own, the bankruptcy court also considered additional factors, such as whether Appellant was solvent. Appellant does not contend that the bankruptcy court erred in its application of the balance sheet test. Appellant concedes that its "balance sheet shows that its assets exceed its liabilities." Reply of Petitioner-Appellant at 4, *In re Investors Group, LLC*, Ch. 11 Case No. 13-32488 (Doc. 42), Adv. No. 13-03115. Instead, Appellant contends that the bankruptcy court erred by relying solely on the balance sheet test to measure the Appellant's solvency.

Appellant cites Texas and Delaware law to demonstrate the different standards to measure solvency. Appellant particularly favors the measure of solvency that considers whether a debtor can pay its debts as they become due. Appellant further cites *Askanase v. Fatjo*, 130 F.3d 657, 674 (5th Cir. 1997), which held that the district court wrongly determined a business was solvent in a fraudulent transfer case. The case, however, was governed by a Texas statute that defined insolvency as "either a person who has ceased to pay bills in the ordinary course of business or cannot pay debts as they come due or is insolvent within the meaning of the federal bankruptcy code." Tex. Bus. &

Com. Code §1.201(23). The statute that governed the dispute in *Askanase* explicitly created two independent tests to determine insolvency. That is simply not the case here.

Citing statutes with varying definitions of insolvency does not establish that the bankruptcy court erred by following the Bankruptcy Code's test for insolvency. The Bankruptcy Code defines insolvency as:

> (A) with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of
> (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and
> (ii) property that may be exempted from property of the estate under section 522 of this title. . . .

11 U.S.C. §101(32)(A).

The bankruptcy court properly determined Appellant's solvency based on the Bankruptcy Code's definition of solvency. Although the court acknowledges that there are multiple ways to determine solvency, Appellant does not state why it is error for the bankruptcy court to calculate solvency according to the Bankruptcy Code's definition of solvency or why the court must consider other statutory definitions for insolvency. Because there is sufficient basis to dismiss the petition for a finding of bad faith for filing the petition to gain a litigation advantage and for being solvent, the court declines to address Appellant's argument that this is not a two-party dispute.

### IV. Conclusion

For the reasons stated, the court **affirms** the bankruptcy court's Order Dismissing Bankruptcy Petition and **dismisses with prejudice** this appeal. The clerk of court is **directed** to prepare, sign, and enter judgment in accordance with this Memorandum Opinion and Order pursuant to Rule 8016(a) of the Federal Rules of Bankruptcy Procedure.

**It is so ordered** this 30th day of September, 2014.

*Sam A. Lindsay*
Sam A. Lindsay
United States District Judge